May it please the Court, my name is Tom Towell from Billings, Montana. I represent the plaintiff, David Long. And I would like to reserve at least four minutes for rebuttal. Thank you. This case is about triples, trucking with triple trailers. Montana and North Dakota allow it. Seventeen States do. The rest of them don't. And as you know, they were going to North Dakota. They had to wait there until the Ohio team brought in the last trailer, hook it up, go back to Billings, and then on to the end of the state, on to Seattle. The – while my client, David Long, was sleeping, there was an accident, and that's the cause that we're here about today. I'm not going to go through any of the facts. I'm sure you're familiar with that. But we sued for lack of training, count one, and negligence, count two. And they responded, the FedEx, the defendant responded, saying that Marco Coombs, it was really his fault, he went to sleep. Now, Marco Coombs says, no, it was a panic flash. Their defendants – the defendant's experts said, no, he fell asleep. Our experts said, it probably doesn't matter, because when he recovered from whatever this was, he should have had time to stop it properly if he'd been properly trained. And we said, it really doesn't matter even then, because if you're saying Marco Coombs fell asleep, then that's negligence, and under the Federal Motor Carrier Regulations, you've got to consider the vicarious liability that you are the carrier and you are legally responsible, whether he was your employee or not. Well, the problem is, in the proposed pretrial order, the way I read the record, that was the first time that you raised the issue of vicarious liability in the pretrial order. And the district court said because that was so late that you were not going to be able to use vicarious liability as a new cause of action in the case. So the district court said vicarious liability is out because you waited too long to assert it right to the last minute, and so there wasn't time. But the question is, what were we supposed to do? We didn't sue Marco Coombs, the driver. We didn't claim that he was liable. We weren't contending that. We were just saying, if you make that as a defense, then this is our response. Breyer, that didn't make any sense to me at all. I read what you said, and you kept talking about a defense. It wasn't in the complaint. You kept talking about it as a defense to a defense. I couldn't follow that at all. I mean, how is it a defense to a defense, vicarious liability? It seems to me it's a cause of action, identifiable, should have been in the complaint, wasn't, came up the first time in the pretrial order, so the question is whether the district court abused its discretion and tell you that's too late, I'm not going to let you use it. But we – our contention was that he didn't fall asleep. He was not negligent. There was no – there was no negligence. So you – but your argument was we can use it as a defense. No. We're saying if you want to raise that as a defense to our argument that he was improperly trained, then that doesn't help you because you have this vicarious liability. Why didn't you put it in your original complaint? And why did you argue it as a defense? I don't get that. But we – admittedly, we probably could have done it and probably should. We did put it in defense. We did put it in negligence. Yeah, but you never – We said general negligence, but – and – We weren't even thinking vicarious liability until the pretrial order, which was way down the line. We were – The question in my mind is whether that was an abuse of discretion to preclude that under these circumstances, because it appears that it's quite probable that it could have been – it wouldn't have caused a big delay in the trial. So I don't know what the damage would have been to the other side. We'll probably hear from them why this was just too late. I mean, you know, no aspersions cast on lawyers, but lawyers always say that. It's too late. You know, we can't possibly get ready by the time of the trial date. And that is – and that is certainly our concern here. I mean, what we raised it as a – we wanted an instruction. We presented it at the time we were supposed to put in our instruction. It was too late, because the pretrial order had been amended by what the Court said. I know the Court did not strike it out of the pretrial order, but it was stricken by the judge. That's a – that's a mistake that I don't think has any consequences, is not altering the pretrial order. The instructions actually, though, were presented two weeks before the pretrial order and the pretrial conference. So that was the time that we presented it. That's what we thought. And we wanted an instruction on that, and that's when we thought we were supposed to present it. And, yes, that's – that's the facts. That's what we've got. But I don't think that it was too late. And, yes, I do think, as the Court requested further information on the pretrial order, what's the impact. I think that just compounded the error. I think that really confused things, because the pretrial order, admittedly, is supposed to control the litigation, and it didn't. And the pretrial order was signed after the pretrial conference. Those things happen, but I think we have to go by what the judge said, was we're not going to let you use vicarious liability. That was the argument about the pretrial order. It just wasn't the Scrivener's error, as we used to say. And perhaps we don't know what a Scrivener was. Now we don't even know what Scrivener's error was. But the instruction that we asked would have cured that, and the instruction they gave instead was that FedEx is not liable for any negligence of Markle-Koenig the exact opposite. Corresponding with what the Court said about the way the pretrial order was going to be. But that's contrary to law. You can't say that you can't give an instruction that something is lawful when it's not. If the district court abused its discretion in taking vicarious liability off the table, then that instruction, for purposes of this case, is consistent. Well, it just doesn't make sense to me that you can instruct the jury that something is lawful when it's not, or vice versa. And that's what we've got here, that FedEx is not responsible for Markle-Koenig's negligence. That's not the law. That's just not the law. And that's my concern. But it was not by vicarious liability was not an issue in the case. Well, I think it absolutely had to be an issue of the case as soon as they came in and said Markle-Koenig was negligent. Now, yes, we probably could have amended a Second Amendment to the complaint when they raised that as a defense. It had to be a dead horse, but you kept calling it a defense to a defense. That's right. And I wanted an instruction on that point. And that's why I raised it at the time of the instruction. So if it's a defense to a defense, how can you possibly assert that as a cause of action on which you're entitled to damages? If it's a defense to a defense. If they insist that Markle-Koenig If our defense is able to defeat their defense, therefore, we get damages. If Markle-Koenig If I ever ran into that in law school, that's an issue. If the defendants claim that somebody else was responsible, we want to assert that as a basis for our claim, yes. That's what we're doing. If I'd You didn't call it a basis for the claim. You said it's a way to defeat their defense. That's right. And that's what I wanted an instruction on. That's all I was asking. I wasn't asking for that as a further defense, but it's true that we did put that in the pretrial order, and it's true that it's there. And it's true it's not vicarious liability alone. It's the violation of the Federal Motor Carrier Safety Regulations. And that's what I think is critical, and that's what we were talking about throughout the trial. If I'd like, unless you have further questions, I'd like to go on to issue two. Sure. I think that's really important as well. The Montana law does have a more stringent requirement for the the more stringent requirement for training. When Ice-T freeze came about in 1992, Congress prohibited all triples, but then they state regulations were in effect on that date, close quote. Montana had a regulation. And under the Montana regulations, you had to have 200 miles or 4 hours behind-the-wheel training in order to do it. The argument is that this accident happened in North Dakota, and North Dakota does not have that training restriction. That's correct. But you have to have, under Federal law, a certification that you've completed training. In Montana, where they got the certification, the only certification that was valid is one that was compliance with Montana law. And if they didn't have that certification, they couldn't go into North Dakota. It's just like a driver's license. If you get a driver's license in Montana, you can't drive in North Dakota unless you've got a license. And that's what we've got here. You've got to have a certification. And that certification has to be in compliance with Montana law. That was the Congress-permitted triples if you comply with the more stringent regulation. Where did your client take over the truck? My client — they're both based in Billings. My client drove to Tower City, North Dakota, on the border of North Dakota. Then he went into the sleeper, and Marco Combe, the untrained driver, drove back, and that accident happened on that. They got into the truck in North Dakota. Say again? They got into the truck in North Dakota. They got — well, they started in Billings, and they ended up in North Dakota. No, no, no. They took over the truck in North Dakota. No. They had the tractor, and they pulled — They drove the tractor to — Drove the tractor. And to — North Dakota. And I think they had two empties or whatever, but they had to wait for a trailer coming in from Ohio. The third trailer was — That was the triple. They did not drive a triple in Montana. They drove — Did they drive a triple in Montana? It's my understanding they took a triple to North Dakota. Well, that's not the triple we're talking about. The triple — The triple that we're talking about they picked up in North Dakota. That's correct. If they had driven it from there to Fargo, would they have had to have — would they have had to have — had to comply with Montana regulations? In order for a person to drive in North Dakota, they have to be certified that they had the training. And if they didn't have a certification in either North Dakota or Montana — You're saying because they started in Montana, they'd have to have that Montana certification even to drive interstate in the Dakotas? No. Because they were certified in Montana, because they took the training in Montana, they have to comply with the Montana law. And if they — No matter — if they drive the — if they're in Florida, they have to comply with Montana law. That's your argument. If the training that they're relying on took place in Montana, yes. Is that the training they're relying on? That's the training they're relying on. They're relying on this trainer, this sort of — this funny little contraption that they put together and some specialist certifying after driving in this thing for a couple hours, it can handle a triple. What's that all about and how does that fit in? Well, first of all, they did the training in a minivan. We think that's almost a joke. And then when they — when they got to actual triples, they did take them for 15 miles down the road, about 20 minutes. The Montana law says you've got to have 200 miles or four hours behind the wheel in order to be certified in Montana. If they weren't certified in Montana, they weren't certified in North Dakota or any other State. Does what they did in the minivan and the triples qualify them to drive anywhere in the United States? I mean, is there some place where that would be enough? What's North — I can't answer that. What does North Dakota require? North Dakota does not have the same training requirements that Montana does. So North Dakota — I don't know. They were driving in North Dakota appropriately under the training regulations. If they were certified, but they weren't certified in North Dakota. They weren't certified in Montana, and they didn't — they couldn't drive in North Dakota unless they were certified that they had, in fact, made the training. You have to have a certification every year. Your argument is they couldn't drive in North Dakota unless they had the Montana certification. That's right. Okay. Now, and I would like to say something about the third issue, if I may. I'm going to run out of time. But perhaps the most significant evidence in the case is the evidence of a malfunction of the FedEx equipment, and that malfunction wasn't even related to these two drivers. After 11 months from the pretrial disclosure and from the time we requested in discovery, they came up with the dispatcher's log. The dispatcher's log said that the team was late getting into North Dakota because they had to stop in Fargo to fix an air leak. And worse, they bypassed the problem. Well, there's — that's a huge problem. That's a huge problem, and it wasn't related. And we say that's — there's an abuse of discretion, number one, because the problem was caused by FedEx, not by my client, yet my client was penalized for it. Number two, the issue was well-known by both parties. In Grill's deposition, our expert's deposition, they spent almost 10 pages talking about it, and it was in one of their — their expert's main points. All of that was in. The supplemental report finally did come in, exactly like it was supposed to, in almost two full months before trial, plenty of time, and it had a devastating impact, because Mark O'Connell said that was the main cause. But it was late, right? The supplemental report was late. The supplemental report, because we couldn't file it at the time the expert witness report was due because we didn't know about it. They didn't reveal it until 12 days after our report was due. But he testified about it at his deposition, correct? Gill. Yeah. Right. They testified. How soon after it was made known was Gill's deposition? I'm sorry? How soon after it was made known did they take Gill's deposition? Oh, I think it was 30 days or something like that. And it was shortly thereafter. You didn't think about it right then and there, taking some action to ask the district court to allow you to supplement the report? What we were asking — what we were doing was we were trying to get more information. Our expert said, get the repair report, get the inspection report, get the people who brought in that evidence. And we kept asking for it and hoping to get it, and we never got a thing. Oh, the repair report was destroyed by a fire. Strange. The inspection report, we can't find. And we can't find the evidence of the witnesses. Don't know where they are. Okay. Mr. Chief Justice, and may it please the Court. I'm not a chief justice. There's only one chief justice in the world. In the Federal system. That's Roberts. Thank you for the promotion. We're just judges. You're welcome. Justices, may it please the Court. I'm Nick Pagnotta, and I represent FedEx Ground. And along with Mark Williams, we're proud to be here today. Nearly all of the issues before the district court in this matter arose due to the plaintiff's failure to comply with the rules of civil procedure, the local rules of court that apply in the District of Montana, and the trial court's orders in this case. Of course, the trial court is in the best position to appreciate the rules. There was a claim of negligence here, right? It was a general claim of negligence, and the factual basis for that claim in the complaint was failure to train and certify. Right. But let me ask you this. Why is you know, when you think about vicarious liability, you think of vicarious liability as sort of a theory of liability. It's not necessarily a cause of action. Yeah, I disagree with that, Your Honor. For vicarious liability to apply, Marco Com would have to be a defendant in the case to recover on a theory for damages. I don't agree with you on that at all. The restatement of agency says no. In an action against a principal based on the conduct of a servant in the course of employment, the principal has no defense because of the fact that the agent had an immunity from civil liability as to the act. So according to the restatement of agency, as of August 9th, 2012, even if the guy had immunity, Com did it under the workman's comp theory, you can still use that go to use vicarious liability. I mean, you argue that's not the case, but I don't happen to agree with that. Well, and if that is the case, then it should have been brought as a claim for damages initially in this case. But no, why is the harm, the harm comes, the damages occur as a result of the underlying tortuous conduct. Right. But it's our position that the other thing is how do you hook FedEx in? How do you get FedEx? I think you affirmatively pleaded in the complaint, and you seek damages for that conduct. But FedEx was a defendant, correct? Correct. But this dramatically would have changed. How would it be? Tell me. Tell me how it would have dramatically changed your approach to the trial. Well, first of all, we didn't blame Marco Com. FedEx didn't blame Marco Com for this accident. We never asserted that Marco Com was negligent, and we didn't ask Marco Com's liability to be apportioned on the verdict. And we believe we couldn't do that because of work comp immunity. But we did assert that the ---- Well, you said he fell asleep. It's all his fault. Correct, Your Honor. And that went to ---- You did blame him, actually. We said that this accident wasn't caused by training. You said it was caused by Com being negligent. No. We said it was caused by a person who fell asleep at the wheel, rather than the failure, as alleged by plaintiff, to certify this person. And that was the theory throughout the case. You put the whole thing off on Com. That's not true, Your Honor, necessarily. We also defended the case on the basis of whether or not FedEx properly trained these people and certified them. You presented evidence that you adequately trained him? Absolutely. There was evidence from the ground hall manager, Jennifer Torgerson, in Billings, who testified that it was appropriate. And we presented testimony of a trucking regulation expert, Norris Hoover, who came in and he had a checklist from the Federal Motor Carrier Safety Regulations, and he went through them one by one and testified that FedEx ground complied with each and every one of those requirements. Would it have been possible for FedEx to drive triples in Montana with that certification as contrasted against what Montana requires, which is more? In other words, if the truck leaves Billings and goes to Livingston, what you just said is irrelevant, because it has to comply with Montana law. According to Federal law, you have to comply with Montana law, right? Not on an interstate transportation. Here, in this case --- Interstate, if you drive from Billings to Livingston. No. Interstate meaning between two States as opposed to intrastate. But listen to his question. Listen to his question. I'm sorry. Interstate. You drive from Billings to Livingston. You know where those are? Yes. Okay. You know what I mean. So can you get away with the training that you said was appropriate? No. Because it falls short of what Montana requires. The training the certification in this case had to comply with the Federal motor carrier safety regulations, not the Montana administrative rules. Because this transportation started in Billings, Montana, and ended up in North Dakota, and then came back from North Dakota to Montana. It was during the second leg that the accident occurred. Before they got into Montana. Correct. It occurred in Hebron, North Dakota, about the middle of North Dakota. So what happens if they had made it into Montana, and then it happens? Our position would be that the regulations control at that point, don't they? No, Your Honor. Our position would be that the Federal motor carrier safety regulations still apply, because the Montana regulations only apply to those trips that start in Montana and end in Montana. They don't cross the border. Intrastate. Yes. Intrastate. That's the only time that the Montana regulations apply. Otherwise, there's all sorts of confusion, as Your Honor was pointing out, between which laws apply. Do we have to analyze North Dakotas, what about Minnesotas, and the various regulations within each state? So a motor carrier is responsible for complying with the Federal motor carrier safety regulations. And that's important in this case with respect to the vicarious liability argument, because FedEx offered that testimony, that it complied with the Federal motor carrier safety regulations. And the jury in this case agreed. The jury found that the Federal motor carrier safety regulations complied with the Federal motor carrier safety regulations. But wait a minute. I'm still trying to understand why it was so you said FedEx would have the vicarious liability would have changed the whole case. I mean, I don't quite understand that. Well, Your Honor, first, we weren't aware that Plaintiff was alleging that we could be, that FedEx could be vicariously liable until two weeks before trial. So the entire case was presented. We explored it through experts. But what other evidence would you have used? I mean, I'm just so confused. We probably wouldn't have blamed Markel-Kahm or asserted a causation defense in the case. We would have simply said we comply with the Federal motor carrier safety regulations. And ultimately, that's what the jury found. The jury never got to causation in this case. And that's important for Plaintiff's claim on vicarious liability. If there was any error, it's essentially harmless because the jury never got to causation. And that was the only place in this case that FedEx alleged that Markel-Kahm's conduct even came into play. And it was, again, as a causation defense. Because the jury never reached it, the jury found that FedEx wasn't negligent in its training and certification. With respect to the administrative rule, the the the actual training did occur in billings. The actual certification process did occur in billings. The certificate itself, which was admitted into evidence as Trial Exhibit 111, it's on the supplemental record at 91, is done in compliance with the Federal motor carrier safety regulations. And it explicitly states that that's what it's certifying, that it complies with the Federal motor carrier safety regulations. And I still don't understand why, even if some sort of State's regulations apply, why North Dakota law wouldn't apply in this case anyway, since this particular leg of the trip started in North Dakota, and, of course, the accident occurred in North Dakota as well. Roberts. Is there any case that says that once you go across the State line, you're still okay even if the State's regulations are more serious? I couldn't find any cases that explicitly state that, Your Honor. But I think it's a right. What do the regs suggest? Well, the regulations suggest that the training has to be done in compliance with the Federal motor carrier safety regulations for interstate transportation of goods. And that's exactly what this was. It was transportation between two States. It wasn't intrastate. It wasn't just within the State of Montana. And I think we need to remember, too, that because this was brought up at the last minute, the district court in this case never got an opportunity to even listen to these arguments. It didn't get a listen to whether or not Marco Com's work comp immunity would apply to FedEx and preclude this type of claim, or whether or not this type of claim is even appropriate under the Federal motor carrier safety regulations. And, therefore, this should be reviewed under an abuse of discretion standard because it was so late. And there really wasn't, to the extent it modified the pretrial order, as Your Honor pointed out, the Court's post or final pretrial conference rulings clearly stated that the Plaintiff's counsel was not going to be allowed to bring up that theory. I mean, the vicarious liability theory. Yeah. After that conference, Plaintiff's counsel submitted a motion for reconsideration within the week between the conference and trial starting, and the Court within a day turned around and ruled on it. So it was clear that this case was not going to proceed with vicarious liability. And that instruction in the case was an appropriate statement of law in this case, as it applied to this case. Now, what about the airlock, the air brake ruling, the expert ruling? This came up as part of a dispatch log that referenced that the team that was meeting Long and Com had experienced an air leak in a dolly. And the record itself states that they were able to resolve the problem and notified Mr. Long and Mr. Com of the problem. And they disputed it, but that was the evidence that the jury heard. That document was produced 45 days before Mr. Grill's deposition. No supplement was ever provided. But we think, more importantly, even listening to Mr. Grill's testimony at deposition and his the supplement report, supplemental report that was provided seven months later, it's clear that his opinion was based on speculation, and it lacked foundation in this case. It seemed like a guess more than anything else. That's exactly right. And during his deposition, he candidly said, I don't know what was bypassed. Exactly. He had no idea what he was dealing with. And Mr. Grill never went to this. First of all, he's not an accident reconstructionist. He's a trucking expert. He owns a local truck driving school and buildings and a bar and lounge. But Mr. Grill didn't do any reconstruction. He had never been to the scene of the accident. He took no measurements. And as of his deposition, he hadn't even seen the photographs that we had been provided by the North Dakota Highway Patrolman. He had absolutely no foundation to testify that this accident was caused by a brake failure. And in any event, that actual log was admitted into evidence, and in spite of the district courts' express ruling, plaintiffs' counsel and the witnesses testified about that issue during the trial. And the Court at one point expressed concern about that and said that Marco Com didn't have foundation for it, plaintiffs' counsel knew it, and he shouldn't have been allowed to testify about it. And she said, quote, and I believe the testimony came in through the back door through Marco Com, and I want to put that on the record. I'm quite concerned about what just occurred. So in any event, the log note was provided to the jury. The jury considered it. In general, this case involved a direct liability claim, and that was the theory that was presented throughout the entire case until two weeks before trial. And there was a claim that the victim had been a victim of a brake failure. I'm sorry, yes, Your Honor. Failure to train, and then the vicarious liability claim two weeks before trial. And there's been some inconsistency as to whether or not it was a claim or a defense to a defense, which is what we heard at the final pretrial conference, and now counsel appears to be stating it's a claim. But it certainly wasn't appropriate at that time. The final pretrial conference is not the time to be bringing up new causes of action. And it would have changed how this case was litigated throughout discovery. Okay. Based on our briefs and what we said today, we request that the Court affirm the district court's orders on the verdict in this case. Thank you. Counsel, I believe you had a minute or two for rebuttal. Very quickly. I just want to make a couple short points. First of all, with regard to Gill Mr. Gill's testimony, there is no question but what, if he had been allowed to testify on that matter, and it's all spelled out in this deposition, I refer to our excerpts of record on page 143. He said there's no question but what it had something to do with the brakes. And if you've got a defect in the brake, that's going to affect a triple. A triple has five center points, pivot points. And when you hook on your trailer, you only have one. With a triple, you've got five. And that is going to have an impact. On another thing I wanted to point out is that in Appendix C of the Federal Regulations, it specifically states, and I cited that in page 32 of my brief, it specifically states that State law and local law are not overruled by the Federal government with regard by Federal safety regulations by the train, by existence there. In other words, they are not precluded and are a valuable, I mean, are a part of the Federal regulatory system, the local law for training. And that was training in particular. And one more thing I'd like to mention. Breyer. Last point. Pardon? Last point. Last point. Okay. He the counsel said that the Montana regulations simply don't apply. That's just totally inconsistent with Congress. And Congress said they do apply. We aren't going to let you do triples unless you apply local law. Thank you. All right. Thank you.
judges: Ripple, Trott, Paez